Arguments not to exceed 10 minutes for Plaintiff, 5 minutes for Meekus, 15 minutes for the Defendant, Ms. Collins for the appellant. Good morning. Good morning. Please the court. My name is Heather Collins, and I'm here representing the appellant, Patricia Travers. In this case, Ms. Travers presented sufficient evidence to the district court that a reasonable jury could conclude she was terminated for taking disability-related leave and FMLA in violation of her rights under the FMLA and ADA. Sorry. Just I got to take a breath. Take your time. It's no problem. The district court erred. There are three issues in this case that we're going to focus on this morning. The district court erred in granting summary judgment for these three reasons. Number one, there was a notice issue. And that was where the district court dismissed one of her disability claims saying that she was not disabled under the ADA. In that case, well, for this point, the defendant had waived that argument in their summary judgment briefing because it had to deal with the prima facie case. And so in the prima facie case, they did not dispute that she was disabled. But nonetheless, the court in footnote seven of its order said that she had not brought together enough proof to show that she was, in fact, disabled. And so the notice issue is one issue. We think that that's problematic under Rule 56F. And that in her briefing, she basically gave the background of the law and said that there was ample evidence. But she didn't go into all the specifics of that evidence because it wasn't disputed by the defendant. And they waived it. They specifically said, assuming arguendo, that she proved her prima facie case. And then they went into the subsequent analysis. The second issue is the re- Assuming arguendo, that doesn't really waive an issue, does it? I mean, they haven't conceded it by saying, assuming for purposes of argument, they've established a prima facie case. I don't see that necessarily as a concession that they have established a prima facie case. Is that what you're saying? Yes, Your Honor. I mean, I put that in my opinions quite often, that assuming without deciding that this occurred, that's not the holding that they actually do have a prima facie case. Well, the defendants didn't argue that she was not, in fact, disabled. Well, they disputed it, I assume, in the answer to the complaint, did they not? And I mean, usually a concession, you have to be a little more specific than that, that's all. Sure, Your Honor. And as to your question regarding the answer, to be honest with you, I can't remember that far back. But for purposes of summary judgment. Okay, you didn't make requests for admission or something like that, that you actually pinned them down on it, did you? I mean. That she was, in fact, disabled. That she has a prima facie case. That she was, well, again, going back to what they raised in summary judgment, and this folds back to Rule 56F, they didn't dispute that she was a disabled person. And even if they had, even if for some reason, you know, that argument holds water, that saying, assuming arguendo, that she established her prima facie case, there was still record evidence that she was disabled. There is an attachment to Ms. Pratt's deposition where they went back and forth with the short-term disability carrier, and it listed out all the problems that she had. And it also goes into, when the ADA was amended, effective January 1st, 2009, as a part of the ADAAA, that, you know, the Congress broadened who was considered disabled rather significantly under the fact. And so, someone that, you know, left work due to a heart condition. She was wearing a heart monitor at work. She ultimately had to get a pacemaker installed, a defibrillator. I think that that clearly satisfies the definition of disabled. And again, there was record evidence that the court just, you know, did not pick up on. And frankly, the plaintiff in her briefing didn't highlight it because, again, the defendant, you know, didn't challenge the prima facie case. So, and now I'm going to go. But nonetheless, ruled against you on the ADA claim? Yes, Your Honor. Ruled against plaintiff on the ADA claim on both. Maybe we can move on here. You've got the FMLA interference claim. And like the prior case, I wonder if our clerk is putting these cases together now for issue purposes. But in the prior case, like this case, there was an issue of whether the plaintiff received all the FMLA time that was requested. It's my understanding that your client did. Did she not? Your Honor, let me just concede that the interference claim is by far the weakest claim. And I would much rather talk about the retaliation claim. How about answering the question? Did she receive all the FMLA time that she requested? I am not 100% sure about that. Because what I recollect... Okay, you're the appellant. You've got to convince me there's some error below. And if you're not sure, I guess I'm not going to be sure either. Sure. What I recollect from the record is that she was granted FMLA through June 10th. Because that's what her supervisor... Or that's what her physician had said that she was going to have. There was the disability dashboard that she was placed on. And it listed on that disability dashboard that it lasted through June 10th. And she was terminated on June 4th. So, again, to the extent... And I apologize that there might be a few days difference. If she did exceed the 12 weeks, then to answer your question is yes. That would negate the interference claim. Okay. And then your other interference claim is the defendants had to give you notice of your FMLA rights. Is that a claim? Yes. Is there any authority for that claim? Yes, Your Honor. The authority for that is contained in the regulations. It's 29 CFR 825-300B subsection 1, subsection 2. That's the notice provision. When an employee tells their employee that they have a specific illness, then the employer has... And the employer can notify them, hey, you have rights under the FMLA. And that notice can be either verbal or written. Then after they give that initial notice, they have, I believe, that it's 10 days to provide them written notice of their specific rights under the FMLA. Verizon has a very different policy in that, you know, they have all their policies online like lots of companies do. But when an employee goes and says, hey, I've got these problems, they say, okay, you know, if you want to, you can go look at this. But they don't provide to them in writing because under the notice provisions, once an employee puts the employer on notice, then the employer has to provide them that notice. What Verizon does is says, okay, you can go file a claim with MetLife if you want to. Okay, if there were a violation of the notice regulations, what's the remedy? Well, the remedy really, in the Sixth, I don't think the Sixth Circuit has really recognized the remedy because it seems to intertwine, you know, if there's retaliation and if they, in fact, lose their job. So, you know, what the remedy is for an interference. I like that. I know your time's up and we'll let the EEOC still have their five minutes. It seems to me that when we, pretext relates to both issues and the company is going to argue that your client did something which caused her to be fired and that's, is this the proactive giving of rebates that people didn't ask for? That's the basis for firing, right? It sounds sort of like Robin Hood being fired for being Robin Hood, sort of, right? Is it something like that is what the basis for it is? Do you agree that that could be a basis for firing somebody for doing something so nice? Well, I think that it could be a basis for terminating someone. It could be. If it, in fact, happened. If it, in fact, happened. Right. Or if they reasonably believed it happened. And, well, I think that there are disputed facts as to whether or not. Right. But the disputed fact is whether it happened or whether they reasonably believed it. It doesn't actually have to happen if the facts show that the company thought it was happening. Well. That's true, isn't it? That is true. But, Your Honor. What's the, assuming that they had some reasonable belief that this was going on, and I understand you object to that, what's the evidence of pretext? And you're out of time, so just give me a sentence or two. The evidence of pretext is, number one, there was the June 3rd memo that was sent to the HR executive director that said specifically that she was fired for attendance issues. With regards to that June 3rd memo, I think the credibility of that memo is in question. And if, in fact, that information in that memo came from a decision maker, because that memo was produced after the close of discovery, after summary judgment briefing, there was no opportunity for plaintiff to cross-examine anyone, and there's information missing in that memo, and in the declaration that supported the late-filed memo, where it came from. Did that information, that she was fired for attendance issues, come from a decision maker? That was never answered. And the specific decision maker that she answered to, Ms. Miller, did not provide an affidavit saying that she did, in fact, give her or not give her that information. Thank you. I appreciate it. No further questions. We'll hear from your co-counsel now. And as I understand it, you're just going to address ADA only, is that correct? That's correct, Your Honor. Good morning. I'm Jim Tucker with the EEOC. And if we could continue that conversation very briefly, if I could answer any other questions you have about the evidence regarding pretext. I believe there's one thing that Counsel for Plaintiff didn't mention regarding the evidence, and that is also not only the document that was created on June 2nd and forwarded on June 3rd stating attendance is the reason for her termination, but also the plaintiff's own testimony that on June 21st, when she was told that she was being fired, the actual termination date, the only reason she was given was because of her taking her leave, her attendance. How is that disability discrimination? I can see how that was perhaps some evidence of FMLA discrimination. How does that overcome the arguably legitimate basis for firing her as a matter of ADA pretext? If I could answer that in two parts, Your Honor. First of all, you actually discussed earlier one of the first cases about the question of whether or not you create evidence that shows that there may be a different reason at play. Regardless of whether or not it was based on disability, it is an entirely different evidentiary presentation of what was going on within the employer's mind. That evidence, coupled with the evidence sufficient to support the prima facie case, is enough to establish pretext. That's under Rees v. Sanderson Plumbing Products, and it's been the law of this circuit for years. So that's one avenue that that evidence could play, or one role it could play in establishing pretext. But to get specifically to your question about disability, the fact that, again, it's uncontested that these managers were all aware that she had taken all this leave because of her disability. So she comes back the day after she's out, after having an event at work, heart palpitations, or excuse me, a reaction to her heart medication that caused her to actually pass out, have to go in and have an ambulance come and take her to the hospital, resulting in a couple more weeks of leave because of her heart condition. This is all information that was before the employer. She comes back on the 21st, and she's told that it's her attendance, that it's because she took leave, that that's why they're letting her go. The manifestation of her disability was that time out. And so it's a reasonable inference to connect the fact that she was out, that they took action against her because of her attendance, that they were taking action against her because of that manifestation of her disability. The first time EEOC is involved in this case is in this court, is that correct? That's correct, Your Honor. Do I infer correctly that the reason that the EEOC decided to address this case was concern about whether there was a prima facie case here as opposed to whether there was sufficient evidence for pretext? I'm sorry, could you repeat your question? I want to make sure I heard you. I thought that the main reason that you all were appearing here was the prima facie case. That's correct, Your Honor. We did take a position on pretext. I know that once you decide to intervene, or not intervene, but appear amicus, you can argue whatever you want related to the ADA, but I'm inferring that what drove the decision in Washington to come here and argue this case was the prima facie case part of it. That's right. But we needn't read that, we needn't reach that, unless we overcome the pretext part of it. And that's why we've taken a position on pretext as well, Your Honor. That's correct. But again, if there are no further questions on pretext, I would like to briefly address the issues before the district court regarding the proper analysis under the amended ADA. I thought that was pretty straightforward regarding in the briefing, and this court's taken the position that the regarded-as standard has changed. In fact, defense counsels conceded on appeal that there wasn't a proper standard that was applied below, or excuse me, what the proper standard is. Let me put it that way, I don't want to put words in your mouth. So that the standard is for regarded-as claims, just to be clear, it's not about whether or not the employer perceived the individual to be substantially limited in some way. It's whether or not the employer perceived an impairment and took action against that individual, regardless of the level of impairment. Regarding the prima facie case elements going to actual disability, again, it's important, at least from the commission's perspective, to reiterate that the amended ADA has encouraged and created a very broad standard for coverage. It's not what it used to be. It's a much lower bar for establishing actual disability. With a focus on, again, broad coverage, a broad array of disabilities and impairments, specifically identifying circulatory functions, the commission's regulations have identified cardiovascular system and organs within the cardiovascular system as major life activities. So again, just to reiterate the point that the ADA has substantially changed the landscape, and even though I think the district court, well-meaning, identified that there had been a change in the law, it did misapply that analysis when it actually used a substantially limited standard in the regarded ADA. Thank you, counsel. Thank you, Your Honors. Good morning. Good morning. Your Honors, my name is Andrew Naylor. I represent Verizon Wireless here today. And what I'd like to do, if I could, is maybe just address and follow up on some of the questions the panel had for counsel for appellant. Let me first address this issue about whether or not the district court applied the right regarded-as standard. I would submit to the court that that really is of no importance to this appeal because Judge Campbell, the district court judge, correctly ruled and held in his opinion that whether or not the plaintiff is able to show they're disabled, regarded as disabled, they're unable to show pretext. That's what that opinion turned on, and that's really what this case turns on. It's whether or not the plaintiff has been able to show pretextual evidence to show that our decision, my client's decision, was not really based on all the disciplinary record that was before when we made the call to terminate her after months and months and months of her violations of the Code of Conduct. Seems like you fired her for pretty nice activity. Well, Judge... I mean, I know you call it an integrity violation. It is, and I think that merits some discussion, some explanation. The client has 85,000 employees throughout the country. We have a Code of Conduct that governs how they're supposed to behave with customers, with colleagues, with managers. It's very clear. All of the employees are trained on it, including Ms. Travers, at the beginning of their employment and throughout their employment as they go on throughout their education. What Ms. Travers was doing, one example, as you pointed out earlier, was she was offering to cash in a rebate that was given to the customer that the customer's supposed to send in as opposed to the customer service representative offering that up. Yes, there's evidence to show that really there could be no harm, no foul. And that is an argument. But the point is, that's not the rule. We have thousands... You state that in kind of a nice way. Actually, if the customer said, I hear there's such a rebate, then she could have given it without having them mail it in. It's very, very possible. And really what Ms. Travers was doing in the example of offering the mail-in rebate, offering the free phone, which is also on the record, offering a free month of service, is she's deciding to say, I'm going to have these promotions, I'm going to decide on my own what they're going to be, how they're going to work, to the detriment of Verizon Wireless. Now, it's true that she can offer those type of benefits to customers if she gets approval beforehand to do so. She didn't do that in this case. And there really is no dispute about that. She was given the write-up, she was given the disciplinary warnings about five times not to do what she was doing. She ignored it over and over and over again. Importantly, both before and after she took her FMLA, before she was even eligible for FMLA, she was violating the Code of Conduct throughout her employment. That's what led to her termination. The panel asked earlier whether or not, or how my client, in our motion for summary judgment, how we dealt with the prima facie case issue on whether or not we conceded that the plaintiff could show she was disabled. Really, what I'd like to do is direct the court's attention to part of our summary judgment brief that clearly says we don't concede that the plaintiff will be able to establish a prima facie case. But basically what we agreed, that for purposes of summary judgment, it's likely there was a dispute of fact in play as to whether or not she was disabled, and we just chose not to argue that and instead go to whether or not she could show that the alleged disabled status led to her termination. So we didn't necessarily concede it, we just basically said, as you do, the judge, arguendo, assuming she could do it for purposes of summary judgment, we'll argue in the alternative. On the interference claim, the question to counsel for the appellant was whether or not Ms. Travers received all the FMLA that she had asked for. And I can tell you, without any hesitation and without any confusion, that she got every single day of FMLA leave that she ever asked for. In fact, when she was brought in to be advised that she was on termination review for her repeated violations of our Code of Conduct, that very same day, she went out on FMLA for approximately two weeks, two and a half weeks. Your counsel concedes, I think, that that's not the strongest argument that she has. I just want to address the question, so I agree. Maybe you could address her stronger argument. Which is? The retaliation claim. Well, Judge, I would... She thinks it's stronger. To the retaliation claim, I think we have to look at all the evidence in the whole record, focusing clearly on the record of discipline that she received. Our brief is very clear on that. You're going right into pretext. I'm sorry? You're going right into pretext. Going right into pretext that she cannot show. And to the, I think, the June 3rd memo that she mentioned, authored by a non-decision maker, I think the law in this circuit is abundantly clear, and I would certainly point to Judge Griffin's decision in Worthy v. Michigan Bell. Judge Griffin's getting a lot of play here. Very popular this morning. I never wrote an opinion. Where very appropriately ruled and held in that case that a stray remark by a non-decision maker is not sufficient to show pretext, particularly in light of the record of this case, where we have multiple, multiple write-ups that were signed by this plaintiff. It was clear that she was on notice. What she was doing was in violation of our code of conduct. She was on notice, and if she continued to do it, she would be terminated. And unfortunately, that's what happened after about five occasions. And the next step is pretext, right? Pretext. Which would... Whether she can show the pretext. And so that would lead us, I think their primary argument on that, Ms. Travis' primary argument on that is the June 3rd memo. Again, non-decision maker. Or the remark made in her termination, allegedly made during the termination meeting. Again, a non-decision maker, which goes back to that case. Any more? Thank you, Counsel. Thank you. The focus here appears to be on pretext. And I'm going to focus on that. I would like to address one thing raised by Mr. Naylor, is that he said that the stray remark was that the statement made in the June 3rd memo was a stray remark made by a non-decision maker. We don't know that. We do not know that that was a stray remark or that it was made by a non-decision maker. It could very well be direct evidence. And if it is direct evidence, then we jump straight into, you know, letting a reasonable jury decide whether or not that there are issues of fact here. There are three things going on with regards to the pretext. Three main things. Before you move on, who do you claim is the decision maker? Well, Verizon says that it's made by a collaboration of people. It has to be made by the supervisor, who is Ms. Galler, by her local HR person, who is Ms. Miller. I didn't ask you what they claim. What do you claim? I claim that it's made by all three. It goes through the levels, and it has to ultimately be approved by regional HR. And so when the immediate supervisor, the level supervisor, Ms. Galler, makes the decision in those team meetings that they have, it has to be approved at the local HR level, and then it has to be approved at the big HR level regionally. And so it's a collaborative decision. There's even record evidence where they say that it's calibrated by management. This is not a one-person decision. And so going back again to this pretext argument, of course there's three ways that you can choose that you can prove pretext. In this case, we're saying that it's more the second method, that it did not actually motivate the decision. And to look at that, it indicts the credibility of the explanation. And that's in Manzer v. Diamond, Shamrock. And again, we're going back to these three main things. The June 3 memo, which was late produced. We don't know where the language in the memo came from. And it is highly coincidental how the assistant for Ms. Miller, who's the local HR person, could have just come up with this language that it was because of her attendance, which plays directly into the theory that her disability-related attendance and her FMLA contributed to her termination, was because it caused her termination. We just don't know that. And so in automatically concluding that she was a non-decision maker, that it's a stray remark or any of those sorts of things, I think the court impermissibly is drawing a credibility determination that it shouldn't draw because there's not that evidence to show that she was a non-decision maker. We don't know where it came from. We just don't know that. Second, there's a statement in the termination meeting. You're being let go. We need you here. You're being let go for your attendance. Ms. Pratt, who was sitting in the termination meeting, could not recall what was said in that meeting. Ms. Gibson-Harris, who made the decision, or who made that statement, she denies making the statement. My client says that she did make the statement. Again, you have a credibility determination that I think a reasonable jury could conclude, okay, if one person, the HR person who's sitting in the meeting, doesn't remember it, then it's a credibility determination between Ms. Travers... It's the statement about... We need you to be here. You've missed a lot of work. We need you to be here. That is a disputed issue of fact. Again, it's our position that it's direct evidence, but you can't really make that final determination whether it's direct or indirect evidence because you have all these different stories going on. Then the third method is just the suspicious timing going on. Her write-ups, all of the write-ups came while she was taking medical leave, after she had taken medical leave, when she started engaging in that protective conduct. You can go through... Sort of the most obvious one, and it was mentioned by Mr. Tucker, is that she passes out in the parking lot at work from her palpitations, and the next day was when they decide to send the regional HR form to go ahead and move forward with her termination. Okay, counsel. I think your time is up. Thank you. Thank you so much. Case will be submitted. We have one more case. Please call the next case.